Filed 4/13/16  Southern Calif. Institute of Law v. State Bar of Calif. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SOUTHERN CALIFORNIA INSTITUTE OF LAW, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> STATE BAR OF CALIFORNIA, et al., <br><br> Defendants and Respondents. | B263251 <br><br> (Los Angeles County <br> Super. Ct. No. BC531619) |

APPEAL from a judgment of the Los Angeles Superior Court, Barbara M. Scheper, Judge.  Affirmed.

Kevin Mauseth, Evan Michael Hess for Plaintiff and Appellant.

Kerr & Wagstaffe, James M. Wagstaffe, Michael von Loewenfeldt, and Kevin B.Clune; Lawrence C. Yee, Rachel S. Grunberg, General Counsel, State Bar of California, for Defendants and Respondents.

_____

## Introduction

In this lawsuit, plaintiff and appellant Southern California Institute of Law, Inc., a law school accredited by the State Bar of California (but not by the American Bar Association), sues the State Bar and its Committee of Bar Examiners, as well as about two dozen present and former Committee members. The suit seeks to thwart the Bar's efforts to enforce adherence to certain rules and guidelines in order to maintain the school's eligibility for accreditation.

A previous federal-court action seeking this result based on charges of constitutional and civil-rights law violations ended in dismissal. This state-court action, comprised of 435 paragraphs of similar (and sometimes identical) claims, was removed to federal court where its federal claims were dismissed before it was remanded for disposition of any remaining state-law claims.

The superior court dismissed six causes of action pursuant to the defendants' anti-SLAPP motion, then sustained demurrers to the remaining six causes of action. Finding no merit in the plaintiff's appeal from these results, we affirm the judgment.

## Background

**The California State Bar and Committee of Bar Examiners**

Respondent State Bar of California is a public corporation whose membership consists of all persons licensed to practice law in this state. (Cal. Const., art. VI, § 9.) The State Bar acts as an arm of the Supreme Court with respect to regulation and control of admission to the State Bar. (*Obrien v. Jones* (2000) 23 Cal.4th 40, 48; *Brotsky v. State Bar of California* (1962) 57 Cal.2d 287, 300.) The State Bar's Committee of Bar Examiners (CBE) is responsible for the approval, regulation, and oversight of law schools in the state. (Bus. & Prof. Code, § 6060.7, subd. (b)(1).) It is authorized to examine all applicants for State Bar admission, and to administer the requirements for admission to practice law. (Bus. & Prof. Code, § 4046, subds. (a) & (b).) An applicant may be admitted only by order of the Supreme Court, after certification by the CBE that all requirements for admission are fulfilled. (Bus. & Prof. Code, § 6064; *Saleeby v. State Bar* (1985) 39 Cal.3d 547, 557.)

Among the three types of law schools whose graduates are eligible to take the California bar examination are California Accredited Law Schools (CALS), consisting of law schools accredited by the CBE, but not by the ABA. (Bus. & Prof. Code, § 6060, subds. (e), (h).)[1] Appellant Southern California Institute of Law, Inc. (SCIL) is in the CALS category.

**ALS Rules and Guidelines**

Under the Accredited Law School Rules of the State Bar (ALS Rules) the CBE has discretion over whether to grant or (subject to Supreme Court review) to terminate a law school's accreditation. (ALS Rules 4.146, 4.175(B), 4.176, 4.177.) The interpretation and application of the ALS Rules are governed by CBE-adopted Guidelines for Accredited Law School Rules (ALS Guidelines). (ALS Rule 4.103.) CALS are subject to CBE inspection at least every five years for compliance with CBE accreditation rules and guidelines. (ALS Rule 4.162.) The CBE has discretion to waive any rule in order to provide a school with time to come into compliance, "but a waiver is temporary," and "[a] request to renew a waiver must be filed with the [school's] Annual Compliance Report." (ALS Rule 4.109.)

SCIL's contentions (set forth in 435 paragraphs in an 85-page first amended complaint) challenge three specific sets of ALS rules and guidelines. The "minimum cumulative bar exam pass rate" rule deals with the requirement of ALS Rule 4.160(M), which became effective January 1, 2013. It requires that CALS must maintain a minimum cumulative bar examination pass rate, to be determined by the CBE, for the CBE's use in evaluating "the qualitative soundness of a law school's program of legal education." (ALS Rule 4.160(M).) ALS Guideline 12.1 provides that the minimum cumulative bar examination pass rate that CALS must maintain—beginning January 15,

---

[1] The other two types of law schools whose graduates are eligible to take the California bar examination are law schools approved by the American Bar Association (ABA-accredited law schools), and law schools that are neither approved by the ABA nor accredited by the CBE but that meet certain other requirements and whose graduates have passed a CBE-administered "baby bar" examination after their first year of law study. (Bus. & Prof. Code, § 6060, subds. (e), (h).)

2015—is at least 40 percent for the most recent five-year reporting period, to be reported on or before July 1 of the year following each reporting period. ALS Guideline 12.2 provides that the CBE "may issue a Notice of Noncompliance" to a school that is not in compliance by September 15, 2014; that a law school that fails to report its compliance by July 1, 2016, "will be placed on probation"; and that a school that does not meet the terms of its probation by the end of 2017 "will be subject to the loss of its accreditation." (ALS Guideline 12.2.)

The second of the challenged rules and guidelines is ALS Guideline 2.3(D), the bar examination pass-rate disclosure requirement. ALS Guideline 2.3(D)(i) and (ii) requires CALS to provide information in their course catalogs or student handbooks, and on the school's Web site, disclosing the "pass rates of its graduates on the ten most recent administrations of the California Bar Examination," either by posting the pass rates themselves or by posting an active link to the page of the State Bar Web site that has the bar exam statistics. (ALS Guideline 2.3(D)(i) & (ii).)

The third of the rules and guidelines challenged by the plaintiff's lawsuit is ALS Guideline 6.7, referred to as the "biennial class offering requirement." ALS Guideline 6.7 provides that CALS must offer required advanced courses a minimum of every two years, and must offer first-year courses annually.

### *SCIL v. Biggers*—the federal lawsuit

On February 4, 2013, shortly after ALS Guidelines 12.1, 12.2, and 2.3(D) went into effect, SCIL filed a federal court lawsuit entitled *Southern California Institute of Law v. Archie "Joe" Biggers, et. al*, SACV 13-193 JVS (RNBx) (*SCIL v. Biggers*). The *SCIL v. Biggers* lawsuit, against 22 current and former CBE members in their individual and official capacities (but not the State Bar itself), charged that the revisions of ALS rules and guidelines and enforcement of requirements with respect to course offerings and continued accreditation, violate SCIL's rights under federal civil rights laws and the First and Fourteenth Amendments to the United States Constitution.

The *SCIL v. Biggers* pleading's first claim for relief charges that the changes to ALS Guidelines 12.1 and 12.2, effective January 1, 2013, violate the Due Process Clause

4

of the Fourteenth Amendment, they lack substantial evidence and rational basis, they were enacted in disregard of State Bar governing procedures, and they constitute an exercise of legislative and executive power by the judicial branch of government in violation of separation of powers under the California Constitution. The pleadings' second claim charges that ALS Guideline 2.3(D)(i) and (ii), requiring disclosure of bar passage rates, violates SCIL's rights of commercial free speech under the First and Fourteenth Amendments. The third claim charges that the CBE's decision, "without fair and impartial process," not to renew a waiver of enforcement of the biennial class offering requirement that SCIL had been granted in the past, violates SCIL's Fourteenth Amendment due process rights. For these claims SCIL sought injunctive and declaratory relief barring enforcement of these rules and guidelines, as well as compensatory and punitive damages and attorneys' fees and costs.

On June 12, 2013 and August 19, 2013, the federal district court granted the defendants' motion to dismiss *SCIL v. Biggers*.[2]

### *SCIL v. The State Bar*—the state-court lawsuit

While its appeal in *SCIL v. Biggers* was pending in the Ninth Circuit Court of Appeals, on December 31, 2013, SCIL filed the action underlying this appeal in the Los Angeles Superior Court. (*Southern California Institute of Law v. The State Bar of California, et al.* (LASC No. BC531619) (*SCIL v. State Bar*). The state-court lawsuit names as defendants the State Bar and the CBE, as well as 23 present and former CBE members in their individual and official capacities (with less than a handful of exceptions, the same as those sued in *SCIL v. Biggers*). SCIL alleges in its first amended complaint that it is a part-time evening law school founded in 1986, accredited by the State Bar in 1996, with approximately 90 to 100 students who attend campuses in Ventura and Santa Barbara. It alleges that it caters to working students, many of whom have minimal pre-law backgrounds and are members of underrepresented ethnic and racial groups. And it alleges that its claims "detail a denial of procedural due process

---

[2] The court initially dismissed the second of the three causes of action without prejudice to amendment, an offer SCIL declined.

5

instigated by malevolent motive." "In a nutshell," the lawsuit "is about the limits of state power and the application of state procedural and substantive due process, as well as accountability for the malicious misuse and abuse of governmental powers under the state and federal constitutions."

In six of the state-court lawsuit's 12 causes of action, SCIL alleges (as had the original federal-court lawsuit) that the CBE's enforcement of the challenged rules and guidelines—the minimum cumulative bar exam pass-rate rule, the required disclosure of bar-examination pass rates, and the biennial class offering requirement—violate state and federal law. The remaining six causes of action (the 1st, 2nd, 4th, 5th, 6th, & 12th causes of action) allege the defendants' malicious, unlawful, and unconstitutional conduct at or in connection with a June 28 and 29, 2013 CBE meeting, in alleged retaliation for SCIL's filing of the *SCIL v. Biggers* lawsuit. SCIL alleges in these six causes of action that the defendants violated SCIL's rights, by advising SCIL in a July 3, 2013 letter, that a communication SCIL had made to some of its graduating students did not comply with ALS rules and guidelines, and requiring SCIL to correct that noncompliance.[3]

**The state-court action is removed to federal court, its federal claims are dismissed, and its state-law claims are remanded.**

On February 7, 2014, the defendants removed the *SCIL v. State Bar* action to the United States District Court. (CV 14-00996 JVS (RNBx).) With respect to the first,

---

[3] The federal district court summarized the circumstances giving rise to SCIL's retaliation claims: "In June 2013, after certifying to CBE that students who had graduated that month had fulfilled their graduation requirements, SCIL sent letters to some students who had not taken a post-graduation practice bar exam. The letters stated that SCIL would take steps to decertify those students to prevent them from sitting for the bar examination that July. SCIL has no authority to decertify students once they have completed their graduation requirements. CBE reviewed the complaints of several concerned students at a meeting on June 28 and 29, 2013, and on July 3, 2013, sent a letter to SCIL informing the school that such conduct appeared to be in violation of ALS Rules and ALS Guidelines. CBE instructed SCIL to advise graduates who had received the letter that their eligibility to sit for the bar examination was not in danger, and that if SCIL did not comply, a notice of noncompliance would be issued." SCIL did comply, and no notice of noncompliance was issued.

second, fourth, and twelfth claims, the district court held that the accreditation of law schools is ancillary to oversight of the admissions process, the authority for which is granted by statute to the California Supreme Court (Bus. & Prof. Code, §§ 6060, 6060.7), of which the defendant State Bar, and its CBE, is an arm. The State Bar's enforcement of rules relating to accreditation of law schools, assisting the Supreme Court, is an exercise of judicial power for which federal law provides absolute immunity. The defendants therefore are protected by common law immunity to the extent these claims seek relief under federal law; and even if they are not absolutely immune, SCIL's federal theories fail to state a claim on which relief can be granted, requiring their dismissal with prejudice. The court also held that SCIL's due process claims would necessarily fail because SCIL had been deprived of no protectable liberty or property interest; and its equal protection claims of selective and malicious enforcement would also fail, because the claim of disparate treatment "'does not apply to forms of state action that "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments,"'" such as the discretion vested in the CBE.

Holding that the claims of the defendants' retaliation against SCIL at the June 28 and 29, 2013 meeting "must fail," the district court explained: Despite SCIL's characterization of the meeting as having resulted in findings of fact and adjudication of SCIL's violations of ALS Rules and Guidelines, its pleading and attached materials show that "no such things occurred." The meeting resulted in no notice of noncompliance to SCIL, and no adverse action with regard to SCIL's accreditation. The pleading shows only that CBE responded to an apparent violation of ALS Rules by informing SCIL of the proper rule and telling it to rectify its violation before a notice of noncompliance was issued. "Here, as with the due process claim, CBE took no action that actually affected SCIL's accreditation or any other property or liberty interest. Thus, the claims rooted in retaliation for the exercise of First Amendment rights must fail."

The district court remanded to state court the third, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh claims, and also any state-law claims under the first, second,

7

fourth, and twelfth causes of action. It denied, as moot, the defendants' special motion to strike under California's anti-SLAPP statute.

**State court sustains demurrer, grants special motion to strike, and denies preliminary injunction.**

On June 16, 2014, the defendants demurred, and filed a special motion to strike the retaliation claims of the first, second, fourth, fifth, sixth, and twelfth causes of action under the anti-SLAPP statute, Code of Civil Procedure section 425.16. Requests for judicial notice (RJN's) accompanied both the demurrer and the anti-SLAPP special motion to strike.[4] SCIL also moved for a preliminary injunction barring enforcement of the challenged guidelines as to SCIL.

On February 2, 2015, the superior court denied SCIL's preliminary injunction motion. On February 18, 2015, it granted the defendants' anti-SLAPP motion as to the retaliation causes of action (the 1st, 2nd, 4th, 5th, 6th, & 12th causes of action). It found that SCIL's retaliation claims are based on the defendants' protected activity—communications made in connection with quasi-judicial proceedings—thereby shifting to SCIL the burden to show a likelihood of prevailing on the merits; and that SCIL was unable to show a likelihood of prevailing on these claims. It held that the defendants' alleged conduct constitutes privileged communicative acts (Civ. Code, § 47, subds. (a) & (b)); that claims based on common-law torts cannot be asserted against the State Bar or CBE (Gov. Code, §§ 814, 815); and that SCIL failed to show that the defendants' alleged conduct was either unconstitutional or deprived SCIL of any cognizable property

---

[4] The defendants' RJN of 18 documents in support of their demurrers refers to their simultaneous RJN of documents in support of their special motion to strike—some documents apparently appearing in both requests. Only the RJN in support of the demurrer is included in respondent's appendix, but some of the requested documents (apparently those overlapping with their RJN in support of the anti-SLAPP motion) are not attached. Appellant's appendix contains neither of these RJN's.

8

interest.[5]  After SCIL declined to amend, the court sustained the demurrers to the remaining causes of action with prejudice.

The court's detailed written opinion explains its reasons.  With respect to the third cause of action's challenge to the biennial course-sequencing requirement of ALS Guideline 6.7, the court held that the CBE's previous waiver of enforcement of the requirement was not a "statutorily conferred benefit," and nothing in the ALS Rules or Guidelines required the CBE to grant or extend the waiver.

With respect to the minimum bar exam pass-rate requirement of ALS Guidelines 12.1 and 12.2 (challenged in the 6th, 7th, 8th, 9th, 11th causes of action), the court found that SCIL's claim is not ripe for adjudication.  Although the CBE allegedly warned SCIL that its apparent violation, if uncorrected, could lead to probation and eventual loss of accreditation, SCIL was neither placed on probation nor was its accreditation withdrawn. Moreover, the imposition of probation is not mandatory:  Under ALS Guideline 12.2, a failure to comply with the 40 percent pass-rate requirement will not result in probation until the end of 2016, and a school will not even be "*subject to*" loss of its accreditation for such a failure until the end of 2017, "at the earliest."  (ALS Guideline 12.2, italics added.)  Before that, SCIL would be entitled to a hearing on the issue; and even then, the CBE still would have discretion to take any appropriate lesser action affecting the school's accreditation or provisional accreditation.  (ALS Rule 4.175.)  Therefore, the court held, SCIL showed no more than a fear of a potential loss with respect to accreditation, but no actual loss.  The court also rejected SCIL's claims that the challenged guidelines violate the Administrative Procedure Act; that they violate executive-branch powers; that they are retroactive, or are presumptively unconstitutional; that SCIL's accreditation is a vested right; that they are either irrational, arbitrary, or ultra vires; that the CBE's Rules Advisory Committee's participation renders the guidelines' adoption void; or that the guidelines violate SCIL's or its faculty's freedom of speech.

---

[5] The formal order granting the anti-SLAPP motion was filed March 3, 2015.

With respect to SCIL's challenge to ALS Guideline 2.3(D), requiring publication of bar exam pass-rate information (7th, 8th, 10th, & 11th causes of action), the court found that the defendants did not lack a rational basis for requiring the disclosure; that the requirement is reasonably related to defendants' interest in preventing deception; and that it is justifiable as part of the regulatory scheme constraining law school accreditation.

On March 30, 2015, the trial court dismissed the state-court case with prejudice. On April 8, 2015, SCIL filed this appeal "from the following judgment or order in this case," specifically identifying the appealed orders as "March 03, 2015 Order Granting Special Motion to Strike (Anti-SLAPP) under C.C.P. 425.16 and March 30, 2015 Order of Dismissal following grant of demurrer."

**Ninth Circuit appeals in *SCIL v. Biggers* and *SCIL v. The State Bar***

On August 15, 2015, the Ninth Circuit Court of Appeals affirmed the federal district court's dismissal of the federal claims in *SCIL v. Biggers.* (*SCIL v. Biggers* (9th Cir. Aug. 24, 2015 No. 13-56718) 2015 U.S. App. LEXIS 14895, pp. 3-4.) On the same date, the Ninth Circuit affirmed the district court's dismissal of SCIL's federal claims in the state-court lawsuit. (*SCIL v. State Bar* (9th Cir. Aug. 24, 2015 No. 14-55690) 2015 U.S. App. LEXIS 14896, pp. 3-4).)

The Ninth Circuit Court held in *SCIL v. Biggers* that SCIL's constitutional due process challenge to the minimum bar passage requirement of ALS Guideline 12.1 and 12.2 fails for two reasons: first, SCIL's current accreditation is unchallenged by the requirement, and SCIL has no property entitlement to renewed accreditation after its current accreditation expires in 2016 (a decision that is within CBE's discretion); and second, the CBE's adoption of the 40 percent bar-passage requirement would in any event satisfy a rational-basis review. (*SCIL v. Biggers*, *supra*, 2015 U.S. App. LEXIS 14895 at p. 3.) SCIL's First Amendment challenge to ALS Guideline 2.3(D) fails to state a claim, the Court of Appeals held, because the required disclosure of past bar exam results regulates only commercial speech, and satisfies the standards for commercial-speech regulations. (*Id.* at p. 4.) And the Court of Appeals held that SCIL's due process challenge to the failure to renew its course-sequencing waiver (ALS Guideline 6.7) does

10

not state a claim, because SCIL has no property entitlement to a continuing waiver. (*Id.* at pp. 4-5.)

In the *SCIL v. State Bar* decision the Ninth Circuit Court of Appeals found it unnecessary to determine whether the defendant CBE members would have absolute immunity, because SCIL's pleading failed to allege a cognizable injury, therefore SCIL's constitutional rights were unaffected. (*SCIL v. State Bar*, *supra*, 2015 U.S. App. LEXIS 14896 at pp. 3-4.)

## Discussion

### I.     Requests for Judicial Notice.[6]

SCIL has requested this court's judicial notice of 14 items it claims are relevant to its opening brief's "factual allegations and arguments"; respondents have filed a "partial opposition," objecting to notice of all but four of these documents. But SCIL has provided this court with no explanation of the requested documents' relevance to any issue in this appeal, and we see potential relevance with respect to only one of the requested items. We therefore take judicial notice of the document identified as exhibit A to the RJN: "Amended versions of ALS Guidelines 12.1 and 12.2" (no copy of which is attached to appellant's RJN, but a copy of which has been supplied by respondents without objection). We deny judicial notice of the other requested documents (exhs. B-N to the request), for lack of any apparent relevance to this appeal.

SCIL has also filed an RJN of another 10 documents in connection with its reply brief and oral argument in this court, with single-sentence explanations suggesting the relevance of each document. In the absence of objection, we grant judicial notice of exhibit A to the request, comprised of two documents: a January 15, 2015 CBE letter to SCIL, with an attached notice of noncompliance (requesting a response within 15 days) with respect to SCIL's failure to meet the minimum bar-examination pass rate required

---

[6] Because SCIL has not appealed from any RJN's granted or denied in the trial court, we do not address those rulings.

by ALS Guideline 12.1; and SCIL's January 26, 2015 response to the CBE.[7] (The superior court's order sustaining the demurrer to the first amended complaint indicated that it was aware of the notice of noncompliance.) We deny the RJN of the remaining requested documents (exhs. B-J to the request), for lack of any apparent relevance to this appeal.

## II. The Trial Court Correctly Granted The Anti-SLAPP Special Motion To Strike.

The trial court granted the defendants' special motion to strike the six causes of action based on allegations of retaliation at the June 28 and 29, 2013 CBE meeting to SCIL's filing of the federal *Biggers v. SCIL* lawsuit, under the anti-SLAPP statute, section 425.16 of the Code of Civil Procedure.[8]

Section 425.16 provides a special motion to strike, as protection for acts done in furtherance of a person's rights of free speech or petition under the United States or California Constitutions. The trial court's ruling on the motion is governed by a two-step process: "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

SCIL contends that the trial court erred in granting the anti-SLAPP motion because the defendants failed to meet their threshold burden of showing that the

_____

[7] The CBE's notice of noncompliance bears the date "January 15, 2014," but apparently was actually issued on January 15, 2015, the date of the CBE's cover letter, and 11 days before SCIL's January 26, 2015 response.

[8] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

12

retaliation claims arise from the defendant's exercise of their free speech rights; and that even if the defendants met that burden, SCIL demonstrated a probability of success on the merits. Our review of these issues is de novo. (*Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees* (1999) 69 Cal.App.4th 1057, 1064.)

We affirm the order granting the special motion to strike.

## A. The Trial Court Correctly Determined That SCIL's Allegations Of Retaliation Arise From Exercise Of The Defendant's Free Speech Rights.

So far as relevant here, section 425.16's protection for "act[s] [done] in furtherance of [a] person's right of petition or free speech under [the] United States or California Constitution in connection with a public issue," includes "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"; and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e)(1) & (2); *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1112-1113.)

The first amended complaint's general allegations (paragraphs 1-225) allege that at the June 28 and 29, 2013 CBE meeting, "SCIL was summarily found in violation of" ALS Rule 4.160(B) (requiring SCIL to "demonstrate integrity in all of its programs, operations, and other affairs"), ALS Guidelines 2.3(A) (dealing with "Honesty in Communications"), and 2.7(A) (requiring adequate notice to students of changes in academic standards); that the defendants intentionally concealed their consideration of this subject; and that the June 28 and 29, 2013 findings constitute "formal quasi-judicial Committee findings."[9] According to the pleading, the defendants' conduct chills SCIL's exercise of its constitutionally protected free speech rights, and caused damage to SCIL's reputation, and institutional injury to the integrity of its accreditation.

---

[9] Our quotations from SCIL's pleadings omit inconsistent italicization of terms with Latin roots, such as *quasi-judicial*.

13

Ruling on the anti-SLAPP motion, the superior court held that the conduct underlying each of the stricken retaliation claims constitutes activity protected under subdivisions (e)(1) and (e)(2) of section 425.16. The CBE's alleged conduct at its June 28 and 29, 2013 meeting, and its July 3, 2013 letter, communicating the meeting's results to SCIL—the "quasi-judicial acts" that allegedly caused SCIL harm—come within the anti-SLAPP statute's protections.

SCIL alleges that the defendants brought a "quasi-judicial hearing before the CBE"; that the defendants conferred about the meeting's agenda, participated in the hearing, found SCIL to be in violation of rules or guidelines, and in the process, "exercised quasi-judicial power"; and after making that finding, they issued a letter informing SCIL of the hearing's outcome. This constitutes written and oral communications made at and in connection with an official proceeding, about an issue under consideration by the official body. And the resulting harm that SCIL alleges— harm to its reputation and integrity—arose, according to SCIL, from this protected conduct. (§ 425.16, subd. (e)(1) & (2); *Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at pp. 1112-1113.)

Civil Code section 47, subdivision (b) provides the defendants with an absolute privilege for publications made in official proceedings authorized by law. (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 379; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784.) The privilege applies to communications to or from governmental officials, as well as to communications preliminary to proposed judicial or other official proceedings. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, *supra*, 47 Cal.App.4th at p. 784.) It applies to communications made in quasi-judicial proceedings, by participants authorized by law, in order to achieve the objects of the proceeding, and that have some connection or logical relation to the action or proceeding. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) These provisions apply to any planning for the June 28 and 29, 2013 meeting, any discussions at the meeting, and any communications resulting from the meeting. And just as such communications are protected under the litigation privilege of Civil Code section 47, subdivision (b), so too they are "equally

14

entitled to the benefits of section 425.16." (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, *supra*, 47 Cal.App.4th at p. 784; *Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at p. 1115.)

SCIL contends on appeal, however, that the anti-SLAPP protections do not apply, because "the gravamen of SCIL's retaliatory claims 'arise from' Defendants' *decisions*" on June 28 and 29, 2013, not from any communication of those decisions: "The fact that Defendants may have later engaged in protected conduct when it [*sic*] sent SCIL a demand letter 'does not convert a claim seeking recovery on a fully accrued cause of action for [defendants'] earlier alleged misfeasance into a claim 'arising from' such later protected conduct.'"

But SCIL's allegations do not support this argument. According to SCIL's allegations, the June 28 and 29, 2013 conduct, boils down to the defendants' consideration of reports from some students that SCIL had threatened to decertify them from taking the bar examination. The only resulting action alleged was the July 3, 2013 letter, informing SCIL that it lacked authority to carry out its threat, and advising SCIL that it might face a formal inquiry unless its misstatements were corrected—advice with which SCIL complied. (See fn. 3, *ante*.)[10]

Such a formal inquiry is a prerequisite to any action the CBE is permitted to take with respect to a school's accreditation. The CBE can act only after the school is given a notice of noncompliance, followed by the school's failure to provide a satisfactory response, the scheduling and completion of an inspection, and—if the inspection results in a written finding of noncompliance—a formal hearing at the school's request. Only after each of these steps has been completed do the rules permit the CBE to take action affecting the law school's accreditation: The CBE may then "take any action affecting

---

[10] SCIL alleges that its only notification of the CBE's June 28 and 29, 2013 findings, was the July 3, 2013 letter. A copy of the July 3, 2013 letter, apparently was attached as exhibit 21 to the first amended complaint, but is not included in appellant's appendix in this appeal. The deficiency is cured by the inclusion in respondents' appendix of both CBE's July 3, 2013 letter to SCIL, and SCIL's earlier letter to certain of its graduates that had been considered at the CBE's June 28 and 29, 2013 meeting.

15

the law school's . . . accreditation that it considers appropriate, including termination of . . . accreditation." (ALS Rules 4.171, 4.174, 4,175(B).) But even then, the Supreme Court has the last word; after the CBE has terminated a law school's accreditation, the school may seek Supreme Court review of the termination. (ALS Rule 4.177.)

No notice of noncompliance resulted from the June 28 and 29, 2013 meeting, with respect to SCIL's threat to decertify students from taking the bar examination. In response to CBE's July 3, 2013 letter, warning that such a notice might be necessary in the absence of corrective action, SCIL did not dispute that it had overstepped its authority (a fact confirmed in its pleading), and it told its students that its earlier communication was mistaken, as CBE's July 3, 2013 letter had advised it to do. There was no notice of noncompliance, no formal inquiry or inspection, and no action by CBE with respect to SCIL's accreditation.

Because SCIL's pleading shows that the July 3, 2013 warning letter, resulted in no actionable wrong or harm, it is left only with the claim that the actionable wrongs on which the defendants' liability rest constitute the CBE's consideration of the students' reports to it about SCIL's threats. Yet consideration of matters concerning SCIL's conduct as an accredited law school—such as unauthorized threats to decertify graduates from taking the bar examination—is squarely within the defendants' official mandate, and thus within section 425.16's protections.

Moreover, even if the CBE had actually taken some action against SCIL, the only harm that SCIL alleges (unidentified harm to its reputation, and "institutional injury" to "the integrity of its accreditation license") could have resulted (if at all) only from the publication of the CBE's June 28 and 29, 2013 findings in the July 3, 2013 letter to SCIL. The mere existence of the June 28 and 29, 2013 meeting, finding that SCIL should be warned that its conduct, unless corrected, might lead to future action with respect to its accreditation) does not itself constitute action with respect to SCIL's accreditation; nor could SCIL's reputation or the integrity of its accreditation license have been harmed by uncommunicated findings alone.

Section 425.16 is not rendered inapplicable, as SCIL argues, by its allegations that the defendants acted maliciously and with improper motives. (§ 425.16, subds. (b)(1), (e); *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 269.) Section 425.16 applies to claims arising from communications made in connection with protected activities, regardless of any motive the plaintiff may ascribe to the defendant's activities. "When evaluating whether the defendant has carried its burden under the first prong of the anti-SLAPP statute, 'courts must be careful to distinguish allegations of conduct on which liability is to be based from allegations of motives for such conduct.'" (*Hunter v. CBS Broad., Inc.* (2013) 221 Cal.App.4th 1510, 1520.)

The trial court correctly ruled that the stricken causes of action, alleging the defendants' retaliation for SCIL's earlier federal lawsuit, arise from the defendants' exercise of constitutional rights of free speech under section 425.16, subdivisions (b)(1) and (e)(1) & (2). The defendants thus met their initial burden of showing that the stricken causes of action come within the anti-SLAPP statute.

**B. The Trial Court Correctly Determined That SCIL Failed To Demonstrate A Probability Of Prevailing On The Merits Of Its Stricken Claims.**

Despite the defendants' successful satisfaction of their first-prong burden, SCIL could defeat the anti-SLAPP motion by demonstrating a probability of prevailing on the merits of its claims. (*Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 63.) But the trial court correctly found that SCIL could not make that showing: "Plaintiff points to no evidence or authority to support its conclusory assertion that defendants' conduct was unconstitutional or that it deprived plaintiff of any cognizable property interest." The court also found that the defendants are entitled to absolute governmental immunity.

We conclude that the doctrine of res judicata—claim preclusion—requires us to affirm these rulings. The federal courts have ruled in *SCIL v. State Bar*, that the defendants' alleged retaliatory conduct at and in connection with the June 28 and 29, 2013 meeting was not unconstitutional and did not deprive SCIL of any cognizable property interest. And in a August 24, 2015 memorandum opinion, the federal Court of

17

Appeals for the Ninth Circuit affirmed the district court's dismissal of the retaliation claims alleged in *SCIL v. State Bar*, holding that SCIL's stricken claims are legally untenable. We set forth the opinion's single-paragraph dispositive discussion in its entirety:

"We need not decide whether Appellees enjoy absolute immunity in this case, because SCIL has failed to allege a cognizable injury. The [July 3, 2013] letter SCIL received from CBE had no legal consequence; by sending it, CBE did not 'make any decision or take any state action affecting [SCIL's] rights, benefits, relationship or status with the state.' [Citing *Gini v. Las Vegas Metro. Police Dep't* (9th Cir. 1994) 40 F.3d 1041, 1045.] Rather, the letter simply notified SCIL that CBE was *contemplating* taking action against the school, and would do so if SCIL failed to correct its conduct. This mere warning of potential action against SCIL does not give rise to the school's constitutional claims. [Citing *Corales v. Bennett* (9th Cir. 2009) 567 F.3d 554, 565] ('Plaintiffs do not have a retaliation claim based on threats of discipline for First Amendment activity if that threat is itself based upon lawful consequences and is not *actually* administered.'); [*Gaut v. Sunn* (9th Cir. 1987) 810 F.2d 923, 925] ('We find no case that squarely holds a threat to do an act prohibited by the Constitution is equivalent to doing the act itself . . . [and] we are not prepared to create an exception to this pattern.'); [*Kerley Indus., Inc. v. Pima County* (9th Cir. 1986) 785 F.2d 1444, 1446] ('[A letter without] operative legal effect . . . cannot constitute the basis of a claim of deprivation of property without due process.') Because no action affecting SCIL's constitutional rights ever occurred, the school's claims with respect to CBE's letter were properly dismissed." (*SCIL v. State Bar*, *supra*, 2015 U.S. App. LEXIS 14896 at pp. 3-4.)

We review de novo whether the federal court's decision binds this court as a matter of res judicata. (*Stewart v. United States Bancorp* (9th Cir. 2002) 297 F.3d 953, 956; see *Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1452 [preclusive effect of a prior judgment of a federal court is determined by federal law].)

The doctrine of claim preclusion, or res judicata, bars relitigation of claims that were brought, as well as claims involving the same transaction or occurrence that could have been brought. (*McClain v. Apodaca* (9th Cir. 1986) 793 F.2d 1031, 1034; see *Butcher v. Truck Ins. Exchange*, *supra*, 77 Cal.App.4th at p. 1452 ["an issue once determined normally may not be reexamined in a later proceeding"]; see Rest.2d Judgments, § 33.)[11] Res judicata applies when there is an identity of claims and of the parties, and there has been a final judgment on the merits. (*Cell Therapeutics, Inc. v. Lash Grp., Inc.* (9th Cir. 2009) 586 F.3d 1204, 1212.)[12]

These qualifications are met in this case. The first amended complaint in *SCIL v. State Bar* was dismissed by the federal district court, and the dismissal was affirmed by the Ninth Circuit; the same pleading was remanded to the superior court, which entered the anti-SLAPP ruling and final judgment that are before us in this appeal. By affirming the district court's ruling that SCIL's retaliation claims failed to allege any legally cognizable injury, and that the claims were properly dismissed, the Ninth Circuit Court of Appeals rendered a final judgment that SCIL's claims had no probability of success. The Ninth Circuit held that the July 3, 2013 letter from the CBE to SCIL, setting forth the results of the June 28 and 29, 2013 meeting, "had no legal consequence"; by sending it, CBE made no decision and took no state action affecting SCIL's rights; "[t]his mere warning of potential action against SCIL does not give rise to the school's constitutional claims," and "no action affecting SCIL's constitutional rights ever occurred."

---

[11] "A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action." (Rest.2d Judgments, § 33.)

[12] The lack of complete mutuality of parties in this case with those in *SCIL v. Biggers* does render res judicata and collateral estoppel principles inapplicable, because a plea of res judicata or collateral estoppel to bar an action or claim may be asserted by one who was not a party, or in privity with a party, to the earlier litigation. (See *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 812; *Zdanok v. Glidden Co., Durkee Famous Foods Div.* (1964) 327 F.2d 944, 955.)

19

We are bound by these rulings as a matter of res judicata and issue preclusion. We therefore need not evaluate—and are barred from reviewing—the merits of the federal court's rulings with respect to these retaliation claims. (*United States v. Stauffer Chem. Co.* (1984) 464 U.S. 165, 170-171; *South Delta Water Agency v. United States, Dep't of Interior, Bureau of Reclamation* (9th Cir. 1985) 767 F.2d 531, 538 [doctrine of res judicata precludes court in subsequent action from relitigating claims decided in prior action]; see *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904-905, 909 [judgment adverse to plaintiff in first suit bars second suit].)

## III. The Dismissals Of The Remaining State-Law Claims Must Be Affirmed.

After striking the six retaliation-based causes of action of the first amended complaint, the trial court sustained the demurrers "with respect to all remaining causes of action not otherwise stricken under Defendants' anti-SLAPP motion . . . ." These remaining causes of action claim:

(1) that the minimum bar examination pass-rate requirement and the biennial class offering requirement violate substantive due process and equal protection under the California Constitution (Cal. Const., art. I, § 7(a));

(2) that the minimum bar examination pass-rate requirement, the bar pass-rate disclosure requirement, ALS Rule 4.160(M), and subdivision (a) of Business and Professions Code section 6060.7, violate the separation of powers provisions of the California Constitution (Cal. Const., art. III, § 3);

(3) that the minimum bar examination pass-rate requirement and bar pass-rate disclosure requirement violate the Administrative Procedure Act (Gov. Code, § 11350, subd. (B)(1)); and

(4) that the bar pass-rate disclosure requirement violates the free speech guarantees of article I, section 2 of the California Constitution.

For the reasons set forth below, we affirm the trial court's order sustaining demurrers to these claims.

20

**A. SCIL's Constitutional Challenges Are Barred By Res Judicata and Collateral Estoppel.**

As we have discussed above with respect to the trial court's anti-SLAPP rulings, the doctrine res judicata precludes relitigation of claims that were or could have been asserted in an earlier lawsuit concerning the same transaction or occurrence. (*McClain v. Apodaca*, *supra*, 793 F.2d at p. 1034; *Butcher v. Truck Ins. Exchange*, *supra*, 77 Cal.App.4th at p. 1452.) Res judicata applies when there is an identity of claims and of the parties, and there has been a final judgment on the merits. (*Cell Therapeutics, Inc. v. Lash Grp., Inc.*, *supra*, 586 F.3d at p. 1212.) It "'treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action."'" (*South Delta Water Agency v. United States, Dep't of Interior, Bureau of Reclamation*, *supra*, 767 F.2d at p. 538.) And it bars litigation not just of claims actually asserted, but also those claims that could have been asserted, but were not, involving the same occurrence or circumstance. (*McClain v. Apodaca*, *supra*, 793 F.2d at p. 1034.)

The doctrine of res judicata also embraces the concept of issue preclusion, or collateral estoppel, which bars relitigation of issues, either factual or legal, that have been conclusively adjudicated between the same parties in a prior action. (*Wolfson v. Brammer* (9th Cir. 2010) 616 F.3d 1045, 1064.)

These doctrines apply here. SCIL's challenges to the constitutionality of the ALS Rules and Guidelines, and their application to SCIL, are barred by the federal judgments in the *SCIL v. Biggers* and *SCIL v. State Bar* cases.[13]

---

[13] We review de novo whether the federal court's decision binds this court as a matter of res judicata. (*Stewart v. United States Bancorp*, *supra*, 297 F.3d at p. 956.)

**1. The doctrine of res judicata requires affirmance of the orders dismissing SCIL's claims that the minimum bar examination pass-rate requirement and the biennial class offering requirement violate state-constitution guarantees of substantive due process and equal protection of the laws.**

The decisions of the Ninth Circuit Court of Appeals in *SCIL v. Biggers* and *SCIL v. State Bar*, affirming dismissal of SCIL's challenges to the 40 percent minimum cumulative bar exam pass-rate requirement and the biennial class offering requirement, preclude SCIL's litigation of their state-law claims that these guidelines violate substantive due process and equal protection under the California Constitution.  (Cal. Const., art. I, § 7(a).)[14]

With respect to these challenges the Ninth Circuit Court of Appeals held in *SCIL v. Biggers* that without a viable claim that the challenged guideline will deprive it of a protected property or liberty interest, SCIL can mount no due process challenge.  "To prevail in a civil action against state actors for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws,' 42 U.S.C. § 1983, . . . the conduct complained of must have deprived the plaintiff of some right, privilege or immunity protected by the Constitution or laws of the United States." (*Thornton v. City of St. Helens* (9th Cir. 2005) 425 F.3d 1158, 1164.)

The Ninth Circuit Court also determined that SCIL has no such property or liberty entitlement.  "Because the challenged Guidelines cannot disturb SCIL's accreditation until 2017 at the earliest, SCIL has no viable claim that [the minimum 40 percent cumulative bar exam pass-rate requirement for future accreditation] will deprive it of its protected interest in accreditation." (*SCIL v. Biggers*, *supra*, 2015 U.S. App. LEXIS 14895 at p. 3.)

---

[14] Article I, section 7 of the California Constitution, provides (in pertinent part) that "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws . . . ."

22

Nor does the CBE's history of allowing a waiver of the biennial class offering requirement to continue without annual requests by SCIL for its renewal create "a legitimate claim of entitlement" to an ongoing waiver of that guideline. "A property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law." (*Jacobson v. Hannifin* (9th Cir. 1980) 627 F.2d 177, 179.) But "[l]ongstanding enjoyment of a government benefit, without more, does not create a property right." (*Thornton v. City of St. Helens*, *supra*, 425 F.3d at p. 1165, fn. 2.) An "applicant does not have a property interest in the renewal of a license if the reviewing body has discretion to deny renewal or to impose licensing criteria of its own creation." (*Id.* at p. 1165.) As the Court of Appeals held, "[t]he granting of SCIL's course-sequencing waiver remains subject to CBE's discretion, and thus does not give rise to SCIL's due process claim." (*SCIL v. Biggers*, *supra*, 2015 U.S. App. LEXIS 14895 at p. 5.) And as SCIL confirms in its opening brief, Business and Professions Code section 6060.7 "empowers the CBE to set rules for the accreditation of law schools"—supplying the CBE with that discretion. We also note the acknowledgement in SCIL's opening brief that although SCIL may seek renewal of its class-sequencing waiver, the waiver is at the CBE's discretion—thereby impliedly conceding the absence of any constitutional claim.

These decisions of the federal Court of Appeals constitute final rulings of fact and law on claims before the federal courts in *SCIL v. Biggers*, and that resulted in dismissal of the federal claims in this action by the federal district court and Ninth Circuit Court of Appeals. In the absence of any authority (or contention) that our state constitution affords greater protections with respect to due process and equal protection than those of the United States Constitution, we are bound by the federal courts' determinations that SCIL's due process and equal protection challenges are fatally deficient.[15]

---

[15] The "test for determining whether a statute . . . unlawfully discriminates against any class is substantially the same under the state prohibitions against special legislation and the equal protection clause of the federal Constitution." (*County of Los Angeles v. Southern California Tel. Co.* (1948) 32 Cal.2d 378, 389; *O'Kane v. Catuira* (1963) 212

SCIL's inability to show that it has been deprived of any property interest also dooms its substantive due process claims. A party lacks any justiciable claim for violation of substantive due process unless and until it is deprived of a property interest. (*Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110.) In that case the defendant county had adopted a plan proposing streets crossing the plaintiff's property. (*Id.* at p. 117.) The plaintiff's challenge to the plan was not justiciable, however, because the "county has taken no action with respect to plaintiff's land except to enact a general plan describing proposed streets, as required by state law." (*Ibid.*) Although some of the proposed streets, if constructed, would cross plaintiff's property does not enable the plaintiff to challenge the plan before its actual implementation to his detriment. "Since the only conduct of the county consisted of adopting a general plan as required by state law, and since we have concluded that the adoption of the plan did not constitute a taking of plaintiff's property, the trial court properly sustained the demurrers of the county defendants to this cause of action." (*Id.* at p. 121.) Here, as in the *Selby Realty* case, the court concluded that the CBE's only conduct was to adopt a plan for regulating law schools, as it was required by law to do; that the plan it adopted did not itself constitute a taking of any property or right from SCIL—consequences that would depend on uncertain future events and could occur only after the end of 2016 at the earliest. So here, too, the demurrer was properly sustained.[16]

---

Cal.App.2d 131, 137.) We note also SCIL's reliance for its substantive due process claim on its periodic (and unfounded) assertion that the CBE wields executive power, rather than acting as an arm of the Supreme Court in the judicial branch of our government—a contention we reject in connection with SCIL's separation-of-powers claim, below. SCIL apparently claims that the CBE is or should be an executive-branch agency because the guarantee of substantive due process "limits what the government may do in both its legislative [citation], and its executive capacities," rather than in any judicial forum. (*County of Sacramento v. Lewis* (1998) 523 U.S. 833, 846.)

[16] This result is not changed by the fact that on January 15, 2015, the CBE issued a Notice of Noncompliance regarding SCIL's failure to meet the minimum bar exam pass rate, of which we have taken judicial notice. (See text at fn. 7, *ante*.) SCIL's claims based on the minimum bar exam pass-rate requirement's enforcement remain unripe and

## 2. The doctrine of res judicata requires affirmance of the dismissal of SCIL's constitutional claims based on freedom of speech.

ALS Guideline 2.3(D)(i) and (ii) requires SCIL either to post the bar examination pass rates of its graduates for the last 10 administrations of the bar exam, or to include a link to the State Bar Web site with that information. In its tenth cause of action, SCIL contends that the CBE's admitted purpose for this requirement is to ensure that prospective students "are not misled by the imprimatur of accreditation into believing that graduation from a given law school will necessarily result in the inability to pas the bar examination." This, SCIL contends, "operates as an unconstitutional restriction on pure speech, commercial speech, and SCIL's web-based hybrid speech."

In *SCIL v. Biggers* the federal district court and the Ninth Circuit Court of Appeals have ruled that these allegations fail to state a claim for violation of the First Amendment to the United States Constitution. The federal district court held that bar examination pass-rate disclosure requirement of ALS Guideline 2.3(D) is merely one of many prerequisites to accreditation; that it constitutes commercial speech that "mandates no compelled recitation of any message about the validity of passage rates as a measure of institutional quality"; that the information required to be disclosed is purely factual and uncontroversial, and prospective students are free to draw their own conclusions about its relevance; and that it does not restrict SCIL's speech or mandate any specific message with respect to any matters of opinion. And the court held that the requirement of ALS Guideline 2.3(D) is reasonably related to the CBE's interest in protecting prospective students, and places at most a minimal burden on SCIL's speech.

SCIL contends, however, that the doctrines of res judicata and collateral estoppel cannot be applied to its free speech claims, because under *Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352, 366, 367, "federal decisions interpreting the First Amendment are not controlling" of claims under the California

nonjusticiable while it remains uncertain whether SCIL will fail in the future to satisfy the minimum bar examination pass rate. (*Selby Realty Co. v. City of San Buenaventura*, *supra*, 10 Cal.3d at pp. 115, 121.)

25

Constitution's free speech guarantees. But significantly, SCIL fails to show how that principle applies here. It has not suggested any manner in which the California Constitution's free speech guarantees apply more broadly to the challenged regulation than would the free speech guarantee of the federal Constitution; and it nowhere identifies any way in which the rules that apply to its statements under the federal and state constitutions would differ in any way. As the court noted in *Los Angeles Alliance for Survival v. City of Los Angeles*, "Merely because our provision is worded more expansively and has been interpreted as more protective than the First Amendment, however, does not mean that it is broader than the First Amendment in all its applications." (*Id.* at p. 367.)[17] And as SCIL affirmatively contends with respect to this point, citing *Gallo Cattle Co. v. Kawamura* (2008) 159 Cal.App.4th 948, 959, "California courts 'follow the United States Supreme Court in matters concerning free speech doctrine . . . unless persuasive reasons are presented for taking a different course.'"

In the absence of any showing that the issues or law applied in the *SCIL v. Biggers* decisions would apply differently to SCIL's free speech challenges under the California Constitution, we are bound by the doctrine of res judicata to affirm the trial court's order sustaining the demurrer to SCIL's claim that ALS Guideline 2.3(D)(i) and (ii) violate California's free speech guarantee.

---

[17] In *Los Angeles Alliance for Survival v. City of Los Angeles*, our Supreme Court reviewed the constitutional validity of an ordinance regulating the solicitation, asking, or begging for money, goods, or services. It held that "regulations such as the Los Angeles ordinance here at issue, that single out the public solicitation of funds for distinct treatment, should not be viewed as content based or constitutionally suspect for purposes of analysis under article I, section 2(a), of the California Constitution." (*Id.* at p. 378.)

26

### 3. The minimum bar examination pass-rate requirement of ALS Guideline 12.1, 12.2, and the disclosure of SCIL's bar pass-rate requirement of ALS Guideline 2.3(D), do not violate the separation of powers requirements of the California Constitution or the Administrative Procedure Act.

#### a. Separation of Powers

SCIL sought a declaration in its eighth cause of action that ALS Guidelines 12.1, 12.2, and 2.3(D), and Government Code section 6060.7, subdivision (a), are invalid because the regulation of law schools is an executive, not legislative or judicial function—thereby violating the separation of powers required by article III, section 3 of the California Constitution.[18] The trial court's order sustaining the demurrer to this claim must be affirmed.

As our Supreme Court has held, "the power to regulate the practice of law," including the admission of attorneys, is a function of the judicial branch of our state government. (*In re Attorney Discipline System* (1998) 19 Cal.4th 582, 592.) The Court explained: "The [separation of powers] doctrine has not been interpreted as requiring the rigid classification of all the incidental activities of government, with the result that once a technique or method of procedure is associated with a particular branch of the government, it can never be used thereafter by another. (Italics omitted.)" (*Id.* at p. 596.) The state bar is "'a public corporation created . . . as an administrative arm of this court for the purpose of assisting in matters of admission and discipline of attorneys.' [Citation.] In those two areas, the bar's role has consistently been articulated as that of an administrative assistant to or adjunct of this court . . . ." (*Id.* at pp. 599-600.)

Although the functions of the judicial branch with respect to the admission of attorneys and attorney discipline may include executive and legislative elements, in

---

[18] Article III, section 3 of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

27

"'California, the power to regulate the practice of law, including the power to admit and to discipline attorneys, has long been recognized to be among the inherent powers of article VI courts. . . . "An attorney is an officer of the court and whether a person shall be admitted [or disciplined] is a judicial, and not a legislative, question." [Citations.]'" (*In re Attorney Discipline System*, *supra*, 19 Cal.4th at p. 592.) "'The important difference between regulation of the legal profession and regulation of other professions is this: Admission to the bar is a judicial function, and members of the bar are officers of the court, subject to discipline by the court. Hence, under the constitutional doctrine of separation of powers, the court has inherent and primary regulatory power. [Citations.]'" (*Id*. at p. 593, quoting 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 356, p. 438, italics omitted.)

Arguing that the Supreme Court's authority over the admission of attorneys is unrelated to regulation of law schools—and that the Court therefore lacks authority to regulate law-school accreditation—SCIL contends (supported by no authority and little explanation) that "it [is not] logically tenable to assert that legal education is related to becoming a lawyer"; that it "makes little sense" to permit the judicial branch to regulate law school accreditation; that the licensing of many other professions comes within the authority of non-governmental (but not executive-branch) entities; and that the Supreme Court's powers over legal education are not adequately limited. But on demurrer we look only to whether the current structure is legally or constitutionally infirm, not whether it makes sense or might be improved.

Admission into the bar ordinarily involves a series of qualifying events, including satisfying the requirements for admission into a state-licensed law school; satisfying the requirements for graduation from that school; certification to take the bar examination and obtaining a passing score; and acceptance into the bar by the Supreme Court. Our law provides that it is the Supreme Court, rather than the legislative or executive branches of government, "that dictates the standards for education, admission and discipline" of attorneys. (*In re Attorney Discipline System*, *supra*, 19 Cal.4th at p. 593.) These are judicial functions, "'[h]ence, under the constitutional doctrine of separation of

28

powers, the court has inherent and *primary regulatory power*.  [Citations.]'"  (1 Witkin, Cal. Procedure, *supra*, Attorneys, § 356, p. 438.)

The court's authority over the standards for admission to the bar after law school graduation and successful passage of the bar examination encompasses also the standards for law school graduates' certification to take the bar examination, and the educational standards required of law schools whose certifications enable their graduates to do so. Under our law, the regulation of the law schools that are accredited to certify graduates to sit for the bar examination—and regulation of the standards required for those schools to retain accreditation—is an element of the standards for education and admission of attorneys, within the authority of the Supreme Court; and the Supreme Court is part of the government's judicial branch.  (Cal. Const., art VI, § 9; *In re Attorney Discipline System*, *supra*, 19 Cal.4th at p. 592.)  The CBE, "by setting standards for accreditation, can impose minimum standards on the quality of education at accredited schools."  (*Bib'le v. Committee of Bar Examiners of The State Bar* (1980) 26 Cal.3d 548, 555.)  Because the power to regulate the education of attorneys is among the functions of the judicial branch of our state government, the order dismissing the separation-of-powers claim in SCIL's eighth cause of action must be affirmed.

### b.  The Administrative Procedure Act

SCIL also contends in its eighth cause of action that ALS Guidelines 12.1 and 12.2's bar examination pass-rate requirement, and ALS Guideline 2.3(D)'s requirement of disclosure of SCIL's bar pass-rate, violate the Administrative Procedure Act, Government Code section 11340 et seq.  It is unnecessary to address the specifics of this claim, because the Administrative Procedure Act applies only to agencies of the executive branch of government—not the judicial branch.  Subdivision (a) of Government Code section 11340.9 expressly exempts from the Administrative Procedure Act's requirements the agencies of the judicial branch of government, of which the State Bar and CBE are a part, as discussed above.  The dismissal of this claim therefore must be affirmed.

29

**Disposition**

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


LUI, J.